Myers *v.* State.

(*Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

B. B. FRAKER, WILLIS JAYNES, JOHN A. ARMSTRONG and J. W. KILGO, all of Greeneville, and JENKINS & JENKINS, of Knoxville, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Myers was indicted, tried and convicted for the homicide of Abe Blankenship, the conviction being for murder in the second degree, with the maximum punishment fixed at 18 years.

Myers, a farmer and cattle buyer, was 53 years of age. For many years he had been what we term "a courtesy deputy sheriff." Apparently the only reason for this position was to permit him to carry a pistol in his rounds as a cattle buyer in the tough part of the county. We know of no authority whereby one may carry a pistol under such conditions but be that as it may, this is the reason given for his carrying one.

On the morning of July 11, 1946, after helping dig a basement for a house he was building, he drove his truck into the town of Greeneville to purchase cement etc., to build a wall in this basement. He parked his truck back of a local hardware store, went to the bank and talked with various acquaintances before going to the local Greene County Courthouse where the homicide took place. After entering the Courthouse, he sat around a while and talked to a friend. He then started to leave the Courthouse by the front door and as he was going down the steps he noticed the butt of the pistol he was carrying sticking out of his front pocket. In order that this pistol would not show he started to place it differently in his pocket when it discharged, the bullet breaking his leg and lodging in the flesh. By the time this happened he was near the bottom step. As his leg was broken he sank to one knee and pitched forward a few feet onto the lap of the deceased. They struggled over the pistol and the deceased was shot and died as a result thereof the following day. The above narration is from Myer's account of the homicide.

The state's witnesses say that the first they knew was that they heard a muffled noise as a fire cracker going off when they looked around and saw Myers sink to one knee and reel or fall forward toward the deceased with his pistol pointed at the deceased. They then relate the struggle about as did Myers. The deceased had no weapon but was apparently struggling with Myers to keep from getting shot. As soon as the deceased was shot one time, Myers' pistol was given by him to a deputy sheriff who was present. Myers told those present to take a pistol from the deceased and said at the time "there is the damned son-of-a-bitch that caused the trouble" indicating the deceased.

The state's witnesses indicate that Myers shot the deceased deliberately after he, Myers, was shot in the leg when he was trying to place the gun in his pocket. One of the prosecution witnesses says Myers accused the deceased of breaking his leg.

Myers testifies on direct examination that the deceased had been the instigator of 21 separate lawsuits against him but that in each instance he, Myers, had won. He further said that various people had told him the deceased had "said he was going to kill me." Two such instances had been cummunicated to Myers on the day of the homicide. On the morning of the homicide he had taken one of these witnesses to a lawyer's office and had this threat put in affidavit form. The above statements were admitted in evidence.

Myers offered as a witness on his behalf the mother-in-law of the deceased. She testified the deceased said: "Mamma have you seen big Arthur lately, and I said, 'No, Abe, I haven't saw him for a week or two' and he said, the damned rascal is running around trying to validate my oath, and I will kill him." She then says she communicated this information to Myers with the admonition "to watch and be careful". This was after the 21 lawsuits and shortly before the homicide.

On motion of the District Attorney General, this testimony of the deceased's mother-in-law was stricken and not admitted because no plea of self-defense was interposed. Exception was taken to this action of the court and is now assigned as error.

The only plea filed by the defendant was that of "Not guilty." In his testimony he had insisted that the shooting was an accident which occurred in the struggle over the pistol after he was shot in the leg. He had insisted that he, Myers, had nothing against the deceased and

did not know the deceased was sitting in front of the Courthouse when he went out, nor did he see the deceased until after he, Myers, was shot and fell across the knees or lap of the deceased.

 Under a plea of "not guilty" in a criminal case, in order to convict, the prosecution is required to prove every material allegation of the indictment, every essential element of the crime charged, to the satisfaction of the jury beyond a reasonable doubt.

 We do not know of any rule of practice wherein a special plea of "self-defense" is required. In so far as we can find or are advised, no jurisdiction makes this requirement. In *State* v. *Linden*, 154 La. 65, 97 So. 299, 300, it is said: "It is not true, as an abstract principle of law, that a plea of self-defense, in a prosecution for murder or manslaughter, is an admission that the defendant did the killing. Self-defense is not a special plea. It comes under the general issue tendered by the plea of not guilty. The defendant does not bear the burden of proof that he or she acted in self-defense. The state has to prove beyond a reasonable doubt that the homicide was committed feloniously and therefore not in self-defense."

In *State* v. *Stevens,* 96 Mo. 637, 10 S. W. 172, substantially the same result was reached with one of the Justices dissenting. In this case the law of self-defense was charged even though the defendant claimed the homicide was an accident.

 It has long been a well settled rule in this State that a defendant is entitled to an affirmative instruction upon every issue raised by the evidence. Of course if the failure to instruct is not harmful, it will not be reversible error. See *Crawford* v. *State*, 44 Tenn. 190; *Green* v. *State*, 154 Tenn. 26, 37, 285 S. W. 554; *Powers* v. *State*, 117 Tenn. 363, 97 S. W. 815.

In view of the statement of one of counsel for the defendant to the court when he was preparing his charge we do not think the trial court can be put in error for failure to charge self-defense. Ordinarily though the defendant would be entitled to such an instruction under the evidence heretofore review. In making this statement we refer specifically to the unsual facts presented after Myers had shot and severely wounded himself. From his viewpoint he was suffering much as a result of his broken leg. He naturally falls forward on one knee and as he does so he sees the deceased four or five feet away. He says that in thus staggering or falling he is thrown toward the deceased. Myers has been told on several occasions—once on the morning of the homicide—that the deceased has said he was going to kill Myers. In view of these facts and Myers' injury it might have appeared to him that the deceased would then do him some serious harm.

It is perfectly true the deceased had committed overt acts that would justify self-defense but on the other hand since the prosecution had made out a clear case of murder in the second degree we feel the deceased's immediate former threats were entitled to be shown at least to mitigate the offense proved by the prosecution.

Ordinarily the law of self-defense is not applicable in a case of a killing resulting from an act which was accidental and unintentional; but the principles of self-defense may be involved where one suffering severe human pain is suddenly faced with one who has threatened the life of the injured party. These facts at least present a picture for the jury to consider in the light of all the facts of the case.

We think that it was prejudicial error in refusing to admit the evidence of threats on the life of the defend-

ant, made by the deceased, which had been communicated to the defendant.

It results therefore that the cause must be reversed and remanded for a new trial.

All concur.