ARTHUR LAWRENCE BROZ, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—472 S.W.2d 907.

April 29, 1971.

Certiorari Denied by Supreme Court October 18, 1971.

458

Walter Baker Harris, Jackson, for plaintiff in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Will Terry Abernathy, District Attorney General, Selmer, Preston Parks, Assistant District Attorney General, Somerville, for defendant in error.

GALBREATH, J. From his conviction and minimum sentence of twenty years and one day in prison for murder in the first degree the plaintiff in error appeals from the judgment of the Circuit Court of Lauderdale County and assigns errors summarized as follows:

1. The evidence was insufficient and preponderates against the verdict.

2. A motion for a change of venue was improperly denied.

3. Proof relating to the reputation of the deceased for violence was improperly excluded.

█ The evidence in the record before us is all circumstantial in nature. Whether such evidence is sufficient under the law as properly charged by the trial court in his instructions to the jury in large measure rests with the triers of fact, but in any event must be pursuasive enough to satisfy them beyond a reasonable doubt of the guilt of the defendant by being not only consistent with his guilt but inconsistent with his innocence to such an extent that it excludes every reasonable hypothesis save that of guilt. See Marie v. State, 204 Tenn. 197, 319 S.W.2d 86.

The proof in the record reveals that the defendant below, Arthus Lawrence Broz, had resided in the same

general community of Lauderdale County as the deceased, Carl G. Yochum (referred to throughout the bill of exceptions as Yoachim), who operated a beer tavern and bootlegging establishment on the Walnut Grove Road. Yochum was known generally to carry with him two metal fishing tackle like boxes which contained large sums of cash estimated at about fifteen thousand dollars. He also was known to be armed for protection against those who might want his money. Yochum was last seen alive on the evening of May 19, 1968, when he brought his girl friend of some two years and sometime employee to her home in Ripley about 11 P.M. after attending a movie in Covington. The following morning, about 8 A.M., a neighbor lady came to the tavern where Yochum lived in a makeshift apartment to borrow a blank check with which to pay a cosmetic saleslady with her. Upon their failure to find the deceased and the noting of signs of foul play including blood on the ground, the sheriff's office was called and an immediate investigation launched by that official and the Tennessee Bureau of Investigation.

The investigating officers found blood and marks that indicated to them a body had been dragged from a front corner of the building to its rear where the deceased's pick-up truck was stuck in the mud and then back to the front area. Shot gun pellets were found where the first blood was observed as well as shot gun wadding. Shot pellets and blood were also found in the truck bed. The track of a motorcycle with a distinctive tread was observed close up against the side of the building. No sign of the deceased or his money boxes could be found, and the investigators concluded that someone traveling by motorcycle had ambushed and shot Yochum with both

#1 buckshot and birdshot and then dragged the body to the pick-up truck and loaded it in the back to transport it away from the scene of the crime, only to be frustrated by the truck's becoming stuck in the mud. It was further evident to the trained officers that the body had then been dragged back to a point near the front of the tavern leaving the telltale blood and pellets in the pick-up and the blood and heel drag marks in the soft ground. It was evident that the officers then theorized that the murderer had left the scene and returned with other transportation to transport the body away for concealment. It was found a week later floating in the Forked Deer River. The physical evidence is such that there appears to be no dispute that the crime was committed as described. The only dispute is as to the identity of the person or persons who killed Mr. Yochum for his money and threw his body in the river. The following evidence points unerringly toward one person, the defendant.

The defendant owned a motorcycle such as could have made the track observed near the tavern wall. He denied taking the cycle to the Dyersburg dealer where he had purchased it for the purpose of having the rear tire taken off and another of a different tread put on, saying that the only reason he took it there was because its clutch was burned out. The dealer denied that there was anything wrong with the clutch but said the defendant insisted on changing tires and having a new one put on after inquiring if anyone had been there checking on his motorcycle. The defendant claimed he disposed of the tire the police suspected was a match for the print left at the murder scene by selling it to some hippie-type cyclist he had chanced upon. He also denied ever pur-

chasing any #1 shot shells for his shotgun, as a sporting goods store operator in Ripley testified he did a few days prior to the murder. The defendant testified that he had sold his shotgun of the caliber used to commit the crime to a Negro named James Jackson in Ripley, whose identity was otherwise unknown to him and to the postal authorities and all others who conducted an investigation to determine if such a person existed. The defendant further denied taking his own pick-up truck to a car wash for cleaning the day after the murder and was directly disputed by a witness at the car wash who was ahead of him and on whom the defendant had to wait to wash his vehicle.

While awaiting action of the grand jury, the defendant escaped jail with the aid of his wife and was a fugitive for more than eighteen months until captured in Detroit in February, 1970. While attempting to trace the escaped defendant with bloodhounds, tracks made by shoes of the type worn by Mrs. Broz were traced to a point near the defendant's home where freshly disturbed earth was found to contain a small amount of money and a part of a bag together with some money wrappers with the name "C. G. Yochum" written on each. Witnesses had testified that the deceased always wrapped the change kept along with currency in the type wrappers found and wrote his name on them. The defendant's wife, although promised immunity by the court from prosecution while in the State as a witness under subpoena, refused to return to Tennessee from Michigan, where she too had fled, to testify for her husband.

It is convincingly apparent from the record that the splendid detective work of Sheriff Lewis Gitchell of

Lauderdale County and agent Thomas Blackwell of the T.B.I. and others wove such a convincing web of circumstantial evidence about the defendant that the court and jury were amply justified in concluding that no reasonable explanation other than guilt could be gleaned from the physical facts and the testimony of impartial witnesses discrediting the defendant's obviously false testimony. Added to this was the further circumstance of the defendant's flight to avoid prosecution, which itself may be considered as a circumstance "inconsistent with innocence, but consistent with guilt." See Brown v. State, 186 Tenn. 378, 210 S.W. 670; and Waldie v. State, 190 Tenn. 537, 230 S.W.2d 993.

The assignments of error challenging the sufficiency of the evidence are overruled. So are the others.

■ There was a full hearing held on the issue raised in the defendant's motion to grant a change of venue which alleged that he could not obtain a fair trial in Lauderdale County because of undue excitement and prejudice against the defendant there resulting from widespread unfavorable publicity in the local press. Although the bill of exceptions timely filed with the clerk of the Court did not contain the transcript of the hearing on the change of venue motion, on motion of the plaintiff in error and for good cause shown we are treating the transcript belatedly filed as authenticated by the trial judge as properly part of the bill of exceptions in this case as now allowed under provisions of T.C.A. sec. 27-111 as amended by Chapter 475 Acts of 1970.

■■ After hearing evidence pro and con on the subject, including the reading of a number of articles that

would have naturally been printed in the local press about the murder, arrest, flight and recapture discussed above, the trial judge concluded that there was not sufficient reason to change the venue. The deceased was not such a person whose death would have excited a great deal of sympathy from the public at large. He sold beer and whiskey and was recently divorced from his wife. His association with his female companion the night of his death extended back a number of years, and his habit of carrying huge sums of money evidenced his distrust of banks and ordinary institutions acceptable to most. He openly went armed in violation of the law. All in all he was not a person whose death would be calculated to plunge the community into a period of prolonged mourning. The after fact of the jury's assessing the minimum penalty for the crime militates against any widespread prejudicial and impassioned attitudes toward the defendant on the part of the citizens of Lauderdale County. The exercise of a trial judge's discretion in refusing to grant a change of venue will not be disturbed unless it plainly appears from the record that the discretion was abused. See Swain v. State, 219 Tenn. 145, 407 S.W.2d 452.

■■ Ample evidence of the general reputation of the deceased for being a person of violence was allowed by the trial judge. The assignment alleges error for excluding such evidence and is partly based on the proper action of the trial judge in ruling that testimony of specific acts of the deceased such as shooting and killing others and fighting with patrons evicted from his tavern was not admissible for this purpose. Evidence of the general reputation of the deceased for peace and violence

in the community is generally admissible as is proof of specific acts of violence directed toward the defendant by the person he is accused of killing if the defendant claims to have been motivated to self defense by fears engendered by such knowledge (see Myers v. State, 185 Tenn. 264, 206 S.W.2d 30); but specific acts of the deceased toward third persons are not admissible to show a general reputation for violence. See Chaffin v. State, 209 Tenn. 590, 354 S.W.2d 772.

The judgment of the trial court is affirmed.

Walker, P.J., and Russell, J., concur.