Billy W. HENLEY, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Nov. 19, 1974.

Certiorari Denied by Supreme Court

March 3, 1975.

---

Lee Asbury, Jacksboro, for plaintiff in error.

David M. Pack, Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Arzo Carson, Dist. Atty. Gen., Huntsville, for defendant in error.

## OPINION

OLIVER, Judge.

Upon an indictment found by the Grand Jury on October 17, 1972 charging the defendant Billy W. Henley with the first degree murder of Carl H. Norton on September 11, 1972, he was brought to trial on April 23, 1973 represented by retained counsel and was convicted of second degree murder and sentenced to the minimum punishment of imprisonment in the penitentiary for 10 years (T.C.A. § 39–2408). Contesting the validity of that conviction, he has brought his case to this Court by an appeal in the nature of a writ of error.

The defendant assails his conviction upon the usual basis of insufficiency of the evidence, insisting that it preponderates against the verdict and in favor of his innocence. And as a part of this insistence he claims that the evidence demonstrated that he was acting in his own necessary self-defense.

We summarize the material evidence. In the early evening of September 11, 1972

a disagreement arose between the defendant and the deceased about a pool game they were playing, on which they had a wager, at a tavern just outside of La-Follette, Tennessee, and the two then separated. The defendant returned to the party he was with and Norton went to the bar to finish his beer. Both men had been drinking but neither was drunk. Then more words were exchanged between the two and the defendant told the deceased to step outside and they would settle the matter. They left the bar, with the defendant leading the way. A few minutes later, when the tavern owner went outside he saw the defendant and the deceased standing beside a small drainage ditch and engaged in conversation, but it did not appear to him that there was any trouble between the two. Shortly after the proprietor went back inside the tavern, he and various patrons heard shots fired in rapid succession. Going outside, they found the defendant and the deceased struggling beside the ditch. The proprietor separated the two men and laid the deceased, who had been shot, down in the ditch. The defendant was standing beside the ditch with his .22 caliber revolver in his hand. The deceased's .38 revolver was found near his hand in the ditch by the ambulance driver, but the evidence was conflicting as to whether he had pulled his gun or the defendant had taken it out of the deceased's pocket and placed it in his hand after shooting him. The next day the sheriff found the defendant's gun where he told him he had hidden it after the shooting. Six gunshot wounds were found on the deceased's body, and at least one of them was fatal. All bullets recovered from his body had been fired by the defendant's gun.

Claiming self-defense, the defendant testified that after he and the deceased went outside the tavern, the deceased pulled a gun on him and kept him at gun point for the entire time they were next to the ditch; that his knees weakened at sight of the gun and he squatted down, and when the deceased said, "Get up, son of a bitch.

I'm going to kill you," he lunged at the deceased and the latter's gun fired and left a powder burn on the defendant's arm; that he then shot the deceased three times in the stomach, they struggled, the deceased shot him again, and he then shot the deceased twice more in the chest. The deceased was a guard at Petros Penitentiary but the defendant said he never knew him while imprisoned there.

The county sheriff testified that he saw no marks on the defendant's body later that night at the jail, and that the defendant told him he had not been injured or shot and that the deceased had pulled a gun on him and threatened him. When the sheriff recovered the defendant's gun the next day, it had five empty shell cases and one live round. And when he obtained the deceased's gun at the hospital where the ambulance driver left it, it contained two empty shell cases and three live rounds. The defendant was "pretty high" when arrested at the scene.

One prosecution witness testified that when he went outside the tavern upon hearing the shooting the defendant was standing beside the ditch holding both guns, one in each hand.

■ The jury simply did not believe the defendant's version of the homicide. Although the burden of proof was not on the defendant to establish that he acted in his own necessary self-defense, Myers v. State, 185 Tenn. 264, 268, 206 S.W.2d 30, that defense presented a question for the exclusive determination of the jury. Bryant v. State, Tenn.Cr.App., 503 S.W.2d 955, and authorities therein cited. By its verdict the jury rejected the defendant's theory of self-defense.

■ Tested by the oft-repeated rules governing review of the evidence in criminal cases when its sufficiency is challenged on appeal, by which we are bound, Webster v. State, 1 Tenn.Cr.App. 1, 425 S.W.2d 799; McGill v. State, 4 Tenn.Cr.App. 710, 475 S.W.2d 223, we can only conclude that the defendant has failed to carry his burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

■ We must reject the defendant's Assignment complaining that, over objection, the trial judge permitted the District Attorney General to ask certain questions of the defendant on cross-examination. This matter was not raised in the defendant's motion for a new trial, with the result that it cannot be considered here. Absent any patent invalidating error, the law is settled in this State that the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and Assignments of Error which were not incorporated in the new trial motion will not be considered on appeal. Jenkins v. State, Tenn. Cr.App., 509 S.W.2d 240; Pulley v. State, Tenn.Cr.App., 506 S.W.2d 164.

Likewise baseless is the defendant's final Assignment that the trial court erroneously disallowed Ray Ford, a witness for the defense, to testify about a specific incident involving him and the deceased, which occurred a few days before the killing.

■ The law has long been settled in this State that the character of the deceased for violence, as well as his animosity to the defendant, as indicated by words and actions at the time of the killing and before, are proper matters for the consideration of the jury upon the question of self-defense. Rippy v. State, 39 Tenn. 217, 220 (1858).

■ While evidence of general reputation of the deceased for peace and violence in the community is generally admissible, as is proof of specific acts of violence directed toward the defendant by the deceased if he defends the killing upon the basis of self-defense, the law is equally well settled that specific acts of the deceased toward third persons are not admissible to show that he had a reputation for violence. Broz v. State, 4 Tenn.Cr.App.

457, 464–465, 472 S.W.2d 907, cert. den. sub nom., Broz v. Tennessee, 406 U.S. 949, 92 S.Ct. 2054, 32 L.Ed.2d 336; Chaffin v. State, 209 Tenn. 590, 354 S.W.2d 772. The trial judge did not err in excluding Ray Ford's testimony.

Affirmed.

RUSSELL and DWYER, JJ., concur.