IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 10, 2002

## STATE OF TENNESSEE v. CLEMMIE RHYAN

**Appeal from the Criminal Court for Shelby County**
**No. 99-08934     John P. Colton, Jr., Judge**

———————————————

**No. W2001-03019-CCA-R3-CD - Filed January 27, 2003**

———————————————

A Shelby County Criminal Court jury convicted the defendant, Clemmie Rhyan, of second degree murder, a Class A felony, and the trial court sentenced him as a Range I, violent offender to twenty-two years in the Department of Correction (DOC). The defendant appeals, claiming (1) that the evidence is insufficient to support his conviction; (2) that the trial court erred by refusing to instruct the jury on self-defense; and (3) that his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

A C Wharton, Jr., District Public Defender; W. Mark Ward, Assistant District Public Defender (on appeal); and Gwendolyn Rooks, Assistant District Public Defender (at trial), for the appellant, Clemmie Rhyan.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Charles W. Bell, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case relates to the defendant's shooting and killing the victim, Kenneth Suiter. Sergeant Larry Colburn of the Memphis Police Department testified that at 6:44 p.m. on December 3, 1998, he was dispatched to the Metro Market Grocery Store at 1378 North Hollywood Street. He saw the victim lying on his back in a grassy area that was just south of the store's parking lot. The area was littered with empty bottles and was separated from the parking lot by a concrete retaining wall that was about thirty inches tall. The victim had been shot once in the chest and was dead. Sergeant Colburn saw an empty pack of cigarettes on the ground next to the victim's left hand, empty wine and beer bottles next to the victim's right arm, and an empty whisky bottle under the victim's right

knee. Sergeant Colburn also saw a kitchen knife, partially covered by trash, on the ground near the victim. He photographed the scene, took measurements, and collected the knife, bottles, and cigarette pack. On cross-examination, he said that he did not know if fingerprints were recovered from the items he collected or if someone moved the body before he arrived.

Lawrence Yancy testified that in December 1998, he worked nights at a Target store. He said that on December 3, he got out of bed about 4:30 p.m. and walked to the Metro Market in order to get a beer before he went to work. He said that before he went into the store, he sat on the retaining wall outside the store for a few minutes. He said that he saw the defendant and the victim walking and talking together and that the men did not appear to be arguing. He said that he could tell the defendant and the victim had been drinking because they were staggering. He said he went into the store, bought a beer, and went outside and sat on the retaining wall. He said that the victim also was sitting on the wall and that the defendant was standing in front of the victim. He said that he was about an arm's length from the defendant and the victim and that they were arguing. He said that the argument escalated and that the victim cursed the defendant. He said the victim told the defendant, "[You] can go on and pull out that rusty ass knife. I'll take it from you." He said the defendant replied, "[You] ain't going to take shit from me." He said that the defendant shot the victim with a handgun and that the victim fell backward into the grassy area. He said that he was afraid and that he ran away. He said that as he was running, he heard the victim say, "[Please] don't shoot me again."

Mr. Yancy testified that he ran to his stepdaughter's house and told her what had happened. He said that after he returned home, he changed clothes, collected his thoughts, and went to the crime scene to see if the victim was dead. He said the police were at the Metro Market and had covered the victim's body with a body bag. He said he did not tell the police what he had seen and went home. He said that the next day, the police contacted him and he went to the police station. He said he gave a statement and picked the defendant's picture out of a photograph array.

Mr. Yancy testified that he had not been drinking when he saw the defendant shoot the victim. He acknowledged that the retaining wall was a popular place for people to gather and drink. He said that although the victim was cursing at the defendant, he did not see anything in the victim's hands and the victim never got off the retaining wall or made any gestures toward the defendant before the defendant shot the victim. He acknowledged having a prior conviction for misdemeanor theft.

On cross-examination, Mr. Yancy testified that when he first arrived at the Metro Market and sat on the wall, someone named Big Daddy also was at the wall. He said that when the defendant shot the victim, he and Big Daddy ran away. He acknowledged that in his statement to police, he said that the defendant "just clicked due to being cursed." He denied telling the police that the defendant said to the victim, "You ain't got nothing, you ain't going to take shit from me, trick. You ain't got nothing but a rusty ass knife. I'll take the knife from you and kick your ass with it." Instead, he said the victim made those statements to the defendant.

Dr. Cynthia Gardner, the Assistant Medical Examiner for Shelby County, testified that the victim died from a gunshot wound to the chest. The bullet penetrated the victim's heart, and he may have lived for a few minutes after the shooting. She acknowledged that during that time, he may have tried to get up. She said the victim had an abrasion on his forehead that may have been caused by the victim falling. She said the abrasion also could have been caused by the victim being struck in the head with a blunt object. At the time of his death, the victim had a blood alcohol content (BAC) of .18 percent. She said the gun used to kill the victim was fired from more than two feet away. On cross-examination, she said that in order for the six foot, two hundred seven pound victim to have had a BAC of .18 percent, he had to have consumed eight to ten drinks.

Tarlisha Carey, Lawrence Yancy's stepdaughter, testified for the defense that she lived one block from the Metro Market and that on December 3, 1998, Mr. Yancy came to her house and told her that someone had been shot. She said that earlier that day, she and Mr. Yancy had been smoking crack and drinking beer in her home. On cross-examination, she acknowledged telling a prosecutor that she had been taking drugs on December 3 and did not remember what had happened that day. She also acknowledged that she did not tell the prosecutor about Mr. Yancy drinking and smoking crack with her on December 3. She said, though, that the prosecutor never asked her about it. She said that at 11:30 p.m. on December 3, the police came to her house but that she was not home. She acknowledged talking to the defendant's attorney about the case and having a prior conviction for misdemeanor theft. A jury convicted the defendant of second degree murder.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant claims that the evidence is insufficient to support his conviction. He contends that, at most, he is guilty of voluntary manslaughter because the evidence shows that he and the victim were in a heated argument, that the victim was cursing him and had threatened to take something from him, and that he "just clicked." The state argues that the evidence is sufficient to support the defendant's second degree murder conviction. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. See Tenn. Code Ann. §§ 39-13-201, -210(a)(1). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b).

Viewed in the light most favorable to the state, the evidence shows that the defendant unlawfully and knowingly killed the victim. Mr. Yancy testified that the victim was sitting on the retaining wall and cursing the defendant. The victim made a comment about the defendant's having a rusty knife and stated that he was going to take it away from him. However, Mr. Yancy, who was sitting an arm's-length from the victim, did not see the victim make any gestures toward the defendant and did not see the victim get off the retaining wall. We believe that a rational jury could have found that the defendant was angry with the victim as a result of their arguing and that he shot the victim knowing that his conduct was reasonably certain to cause the victim's death. We note that the trial court instructed the jury as to voluntary manslaughter, but the jury believed that the defendant knowingly killed the victim without adequate provocation. "Whether the acts constitute a 'knowing killing' (second degree murder) or a killing due to 'adequate provocation' (voluntary manslaughter) is a question for the jury." State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). We conclude that the evidence is sufficient to support the conviction.

## II. SELF-DEFENSE INSTRUCTION

Next, the defendant claims that the trial court erred by refusing to instruct the jury on self-defense. He claims that a self-defense instruction was warranted because the jury could have inferred from the evidence that the victim possessed a knife and that the defendant was attempting to prevent the victim from robbing him. The state argues that the trial court was not required to give a self-defense instruction because the evidence shows that the defendant possessed the knife and that he could not have reasonably believed that he was in imminent danger of death or serious bodily injury. We conclude that the trial court did not err by refusing to instruct the jury on self-defense.

In Tennessee, the law of self-defense is fundamental to a case when the evidence fairly raises it as an issue. See Myers v. State, 185 Tenn. 264, 268, 206 S.W.2d 30, 32 (1947). To determine whether self-defense is fairly raised by the proof and must be instructed to the jury, "'a court must, in effect, consider the evidence in the light most favorable to the defendant, including drawing all reasonable inferences flowing from that evidence.'" State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998), app. denied (Tenn. 1999) (quoting State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993)). A person is justified in using force against another person when he or she reasonably believes (1) that death or serious bodily injury is imminent and (2) that the force used is immediately necessary to protect against the other person's use or attempted use of unlawful force. Tenn. Code Ann. § 39-11-611(a).

In this case, self-defense was not fairly raised by the evidence. Although a knife was recovered from the crime scene, the evidence did not reveal to whom it belonged or if it was related to the shooting. In any event, Mr. Yancy testified that before the shooting, he did not see anything in the victim's hands and heard the victim say to the defendant, "[You] can go on and pull out that rusty ass knife." Thus, if a knife was involved in this case, the evidence indicates that the defendant, not the victim, possessed it. Even assuming arguendo that the victim had a knife, Mr. Yancy testified that he did not see the victim make any gestures toward the defendant and that the defendant shot the victim while the victim remained seated on the retaining wall. Neither the state nor the

defendant presented any evidence regarding the victim's attempting to rob the defendant. We conclude that the defendant was not entitled to a self-defense instruction.

### III. EXCESSIVE SENTENCE

Finally, the defendant claims that his twenty-two-year sentence is excessive because the trial court misapplied enhancement factors and failed to consider applicable mitigating factors. The state claims that the trial court properly sentenced the defendant. We conclude the defendant's twenty-two-year sentence is proper.

At the sentencing hearing, the then forty-eight-year-old defendant testified that he could read a little and had worked part-time before he was arrested. He acknowledged that he had lived with his mother most of his life and had prior convictions. He said that at the time of the offense, he weighed one hundred sixty pounds and that the victim weighed over two hundred pounds. He said that the victim was a bully and that two to three hours before he shot the victim, he and the victim had gotten into a fight. He said that just before the shooting, the victim "came at me again" and that he shot the victim in self-defense. He said that other people witnessed his first fight with the victim but that none of them would testify. He said that at the time of the shooting, he did not see Lawrence Yancy at the Metro Market and that Mr. Yancy lied at trial. He said that he was sorry for what had happened and that he was taking medication in jail. He said that he, the victim, and the victim's brother had gone to school together and that he had dreams every night. On cross-examination, the defendant acknowledged that he had a serious drinking problem. He also acknowledged that he had a prior conviction for robbery but said he was framed for that crime.

Bertha Johnson, the defendant's sister, acknowledged that the defendant lived with his mother and that "the family kind of picked up and helped him along the way." She said that since the shooting, her brother had changed. She said the defendant was sad, remorseful, and had been on a suicide watch in jail. She said he was on medication for depression and was sorry for what had happened.

According to the presentence report, the defendant graduated from high school and received a certificate in furniture refinishing. The report shows that he has two adult children and has worked as a mechanic and a tree cutter since 1983. He stated that his physical and mental health were poor and that he took medication for depression, anxiety, and pain. In the report, the defendant said that he started drinking as a teenager and continued to drink until he was incarcerated in 1998. He said that he had not used drugs and that he had not participated in any alcohol or drug treatment programs. The report reveals that the defendant was convicted of armed robbery in 1981 and car theft in 1975. He also has prior convictions for disorderly conduct, possession of a weapon, and driving under the influence (DUI).

The defendant argued that the trial court should apply the following mitigating factors, as listed in Tenn. Code Ann. § 40-35-113:

(2) The defendant acted under strong provocation;

(3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense; [and] . . .

(11) The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct[.]

The state argued that no mitigating factors applied and that the trial court should apply enhancement factor (1), that the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the range; factor (10), that he had no hesitation about committing a crime when the risk to human life was high; and factor (16), that he committed the crime under circumstances in which the potential for bodily injury to the victim was great. See Tenn. Code Ann. § 40-35-114(1), (10), (16) (Supp. 2001) (amended 2002).[1]

The trial court ruled as follows:

In this particular case we have a death being involved where the [victim] died in this case. And taking into consideration the victim impact statement, which the court has considered and read by this victim's family, the presentence report, the prior record of defendant, statements of counsel, the mitigating factors filed by defendant and the enhancing factors filed by the state, the court finds that the defendant should be sentenced and must be sentenced according to the law mid-range and finds enhancing factors to allow the court to sentence this defendant to 22 years, range I, Tennessee Department of Corrections.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

---

[1]The legislature's 2002 amendment to Tenn. Code Ann. § 40-35-114 added as the new enhancement factor (1) that the "offense was an act of terrorism" but changed the existing enhancement factors only in increasing their designating number by one. Thus, former enhancement factor (1) is now enhancement factor (2), factor (10) is now factor (11), and factor (16) is now factor (17).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. T.C.A. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

The sentence to be imposed by the trial court is presumptively the midpoint in the range for a Class A felony unless there are enhancement factors present. Tenn. Code Ann. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Tenn. Code Ann. § 40-35-210(d)-(e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986); see Ashby, 823 S.W.2d at 169. In this case, the trial court failed to state at the sentencing hearing which enhancement and mitigating factors it found applicable. At the motion for new trial hearing, the trial court stated that it had applied enhancement factor (1) because the defendant had been convicted of armed robbery and had been "in trouble over a period of time." As to factors (10) and (16), the trial court did not state at either hearing any specific facts that supported their application. In addition, the trial court did not indicate the weight given to the three factors. We believe this does not satisfy the requirements of § 40-35-210(f). Therefore, we review the defendant's sentence de novo without a presumption of correctness.

In conducting our de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; Moss, 727 S.W.2d at 236-37.

The defendant claims that the trial court erroneously applied enhancement factors (10), that he had no hesitation about committing a crime when the risk to human life was high, and (16), that the circumstances of the offense presented great potential for bodily injury to the victim, to his sentence because those factors are inherent in second degree murder. In addition, he contends that the provocation in this case was sufficient to warrant applying mitigating factors (2), (3), and (11).

The state agrees that the trial court misapplied enhancement factors (10) and (16). However, it contends that the defendant's twenty-two-year sentence is justified because in addition to enhancement factor (1), that the defendant has a previous history of criminal convictions, factor (9), that the defendant employed a firearm during the commission of the offense, also applies.

As a Range I offender convicted of a Class A felony, the defendant's presumptive sentence is twenty-years. See Tenn. Code Ann. §§ 40-35-112(a)(1), -210(c). The defendant does not contest the trial court's application of enhancement factor (1). Moreover, we agree with the state that factor (9) is applicable because there is no question that the defendant committed the crime with a firearm. In light of these two enhancement factors, we believe that a twenty-two-year sentence is proper. In addition, we believe that if the defendant is entitled to any mitigation based upon his being provoked or the circumstances of the crime, it would not reduce the defendant's sentence in this case. We affirm the defendant's twenty-two-year sentence.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE