# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 19, 2012 Session

## STATE OF TENNESSEE v. JOSHUA A. RANDOLPH

**Appeal from the Criminal Court for Sumner County**
**No. 188-2010     Dee David Gay, Judge**

_____

**No.  M2011-01130-CCA-R3-CD - Filed July 12, 2012**

_____

Appellant, Joshua A. Randolph, was indicted by the Sumner County Grand Jury in March of 2010 for aggravated assault and domestic assault after an altercation took place at the home occupied by his estranged wife and children.  Appellant was convicted by a jury of the lesser included offense of assault.  He was acquitted of domestic assault.  The trial court sentenced Appellant to eleven months and twenty-nine days of probation.  After the denial of a motion for new trial, Appellant filed a notice of appeal.  On appeal he insists that the trial court erred by failing to instruct the jury on self-defense.  After a review of the record, we conclude, as the State concedes, that the trial court did err in failing to instruct the jury on self-defense where the evidence fairly raised a contested issue of fact, i.e., whether Appellant was in the home with consent of the lawful resident when the altercation took place, and therefore entitled to raise self-defense because he claimed he was attacked.  As a result, the jury instructions failed to inform the jury of the applicable law.  Consequently, Appellant's conviction is reversed and remanded for a new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Connie Reguli and Megan Woodson Miller, Brentwood, Tennessee, for the appellant, Joshua A. Randolph.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Tara Wyllie, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

Michael Kinkade,[1] owned a house at 1023 Stafford Court in Hendersonville. Mr. Kinkade was a friend of Flowers Randolph, Appellant's estranged wife. Appellant was living in North Carolina; Mrs. Randolph had recently moved into the home owned by Mr. Kinkade. The house was on the market to be sold but had been sitting vacant for about one year. Mr. Kinkade offered to let Mrs. Randolph live in the house in exchange for keeping the house looking nice for potential buyers. Mrs. Randolph and her three sons moved into the house about three to six weeks prior to the incident that gave rise to the indictment.

Appellant was indicted after an altercation between him and Mr. Kinkade that occured over the Christmas holidays of 2007. Over the holidays, Appellant came to town to visit his children. While in town, he stayed at the house on Stafford Court with Mrs. Randolph and the children. On December 26, 2010, Mrs. Randolph admitted to Appellant that she was addicted to pain medication. The two got into an argument, and Mrs. Randolph asked Appellant to leave the house. When Appellant left the residence, Mrs. Randolph thought Appellant had gone back to North Carolina. Appellant however, recalled telling Mrs. Randolph that he would be back the next morning to pick up the children for the day. According to Appellant, he called Mrs. Randolph the next morning to arrange pickup of the children. She did not answer the phone.

Prior to December 27, 2010, Mrs. Randolph talked to Mr. Kinkade about coming to the house to repair something on the fireplace. She wanted to roast marshmallows with her children over the holidays, and Mr. Kinkade needed to make a repair before it was usable. Mr. Kinkade came to the house in the early afternoon of the 27th to repair the fireplace. Appellant arrived at the house shortly thereafter. When he pulled into the driveway, he saw a vehicle he did not recognize. After Appellant entered the house, he saw a man he did not know walk through the house, get a soda out of the fridge, and sit down on the couch. Appellant did not speak to the man, going directly upstairs to talk to Mrs. Randolph. Appellant stated that he was "collective" about the events, "taking it [all] in." When Appellant got upstairs, he asked Mrs. Randolph "who the f- - - is that man downstairs?" She informed him that Mr. Kinkade was there to fix the fireplace.

---

[1] The spelling of this name is inconsistent throughout the record. However, on a form filled out by the victim, the name is spelled "Kinkade." We have chosen to spell the name in this opinion as the victim spelled it on the form.

Appellant walked out of the room abruptly, went downstairs and asked Mr. Kinkade, "Who the f - - - are you?" Mr. Kinkade told Appellant that he was at the house to look at the fireplace but that it really was none of his "business who the f - - - [he was]." According to Appellant, Mr. Kinkade lunged at him with his fists cocked "like boxers do." According to Mr. Kinkade, the men approached each other. At about that same time, Mrs. Randolph ran down the stairs to intervene telling Appellant that he did not "understand" the situation. Appellant grabbed Mrs. Randolph by the throat and pushed her out of the way. Appellant claimed that he pushed his wife out of the way. Appellant hit Mr. Kinkade in the jaw several times. Mr. Kinkade tried to fight back, but Appellant continued to hit Mr. Kinkade in the face. The children were pleading with their father to stop hitting Mr. Kinkade. Mrs. Randolph ran upstairs and called the police. Both Mr. Kinkade and Mrs. Randolph testified that Mr. Kinkade did nothing to instigate physical contact. Appellant testified that he wanted to protect his wife and children from a man he thought might be a drug dealer. He claimed that he was never hit by Mr. Kinkade during the altercation because he "was fast."

On cross-examination, Appellant admitted that he did not own the house where the altercation took place. Additionally, Appellant admitted that he had been asked to leave on the night before the altercation and showed up at the house uninvited on December 27th.

Mr. Kinkade suffered a shattered upper jaw, a missing tooth, and cuts to his lip. He had surgery to repair his jaw that required him to have his jaw wired shut for seven weeks. During surgery, doctors had to use fifteen screws and three plates to hold his jaw together.

Officer Brandon Clark responded to the 911 call at the residence. As he approached the home, Appellant was leaving in his vehicle. Officer Clark stopped Appellant. Appellant had blood on his left arm. Appellant explained to the officer that there was a man in his estranged wife's home who refused to identify himself, so Appellant hit him. Appellant did not suggest to the officer that Mr. Kinkade struck Appellant. Officer Clark described Appellant as uninjured with the exception of a mark on his left hand. At the scene, Officer Clark noticed a lot of blood.

At the conclusion of the proof, counsel for Appellant asked the trial court for a jury instruction on self-defense. The trial court determined:

> The Defendant was an invited guest two or three days prior to this incident. He left the 26th and on the 27th he called four times. He couldn't get anybody to answer. He didn't wait on anybody to give him consent to enter the residence. He walked into the home on the 27th. He was uninvited at that time. He had not been given permission to enter. Yes, he might have been a fixture there in the past. Yes, he might have children there that are important

-3-

to him and everybody else, but under - - I'm looking under the terms of the law here, he's an uninvited guest at that time and he walked into this home and nobody knew he was coming and nobody knew he was there until he was there. And the most damaging thing that I find is he admitted that he didn't have permission to be there.

So therefore, I'm going to deny the self-defense instruction. I'm going to deny the defense of a third-party instruction and I'm going to deny the Necessity Instruction. A necessity instruction is like when somebody is out in a blizzard and have no place to stay and they break in to save their own life or when they jump on a ship when their ship is sinking. There was no absolute necessity here. There was no absolute self-defense here. For those reasons, the self-defense instruction will be denied.

The trial court read the charge to the jury. During deliberation, the jury submitted the following question to the trial court, "Do we take into considerations [sic] Mr. Kincade's [sic] actions before and during the fight? Specifically do we consider self-defense?" The trial court responded that everything had "been given to [the jury] in the instructions that you must consider." The jury returned a verdict of guilt on the lesser included offense of simple assault and not guilty on domestic assault. Appellant was subsequently sentenced to eleven months and twenty-nine days of probation.

Appellant filed a motion for new trial in which he argued that the trial court improperly refused to charge the jury with self-defense. The trial court denied the motion. Appellant filed a timely notice of appeal.

*Analysis*

On appeal, Appellant argues that the trial court committed reversible error by failing to instruct the jury with self-defense. Specifically, Appellant insists that the issue of whether he was "lawfully on the premises" was a question for the jury; there was ample evidence to support an instruction on self-defense; and the trial court's failure to include the instruction denied Appellant a fair trial. The State agrees.

Tennessee Code Annotated section 39-11-611(b)(2) allows for an affirmative defense of self-defense when a person is engaged in a situation where he reasonably believes there is a danger of death or serious bodily injury. That statute, in relevant part, provides as follows:

(2) Notwithstanding [Tennessee Code Annotated] § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and

> (C) The belief of danger is founded upon reasonable grounds.

T.C.A. § 39-11-611(b)(2).

A trial court has the duty to "give a complete charge of the law applicable to the facts of the case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986). This duty includes "giving jury instructions concerning fundamental issues to the defense and essential to a fair trial . . . ." *State v. Anderson*, 958 S.W.2d 9, 17 (Tenn. Crim. App. 1998); *see also Myers v. State*, 206 S.W.2d 30, 32 (Tenn. 1947) (holding that a defendant is entitled to an affirmative instruction on self-defense if raised by the evidence). In deciding whether a defense instruction is warranted, the trial court "must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001).

Though the question of whether an individual acted in self-defense is a factual determination to be made by the jury, *see State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993), our law also mandates that "[t]he issue of the existence of a defense is not submitted to the jury unless it is fairly raised by the proof." T.C.A. § 39-11-203(c). Additionally, this Court is instructed to interpret the above statute to require that "[t]he defendant has the burden of introducing admissible evidence that a defense is applicable." *Id.*, Sentencing Comm'n Cmts.; *see also State v. Leaphart*, 673 S.W.2d 870, 873 (Tenn. Crim. App. 1983) (holding "[a]lthough it is well-settled that an accused is entitled to an affirmative instruction on every issue fairly raised by the evidence, there is no requirement that the court charge on matters not raised by the proof"). Thus, this Court may find error only if a jury charge "fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

In the instant case there were contested facts as to whether Appellant was an expected guest in the house with Ms. Randolph's consent or whether he was on the premises without her consent. Ms. Randolph testified she had asked Appellant to leave her residence the day before the incident with Mr. Kinkade and she had not expected him to return. This is the version of events apparently accredited by the trial court in determining Appellant was not lawfully in the home and therefore could not claim self-defense.

Although Appellant stated on cross-examination he was asked to leave, Appellant also testified that the day before the altercation he voluntarily left the house following a fight with his wife but that he told her he would return the following day to pick up the children for a day with him. While Appellant testified he could not contact his wife prior to going to her residence, he also testified he believed his wife was expecting him on the day of the altercation and just before the fight Ms. Randolph, rather than asking him to leave, began getting the children ready to leave. At this point the fight with Mr. Kinkade ensued, according to Appellant, when Mr. Kinkade lunged at him with clinched fists.

This case presented a question of fact as to whether Appellant was in the home with Ms. Randolph's consent and therefore in a place where he had a right to use self-defense to repel an attack. Resolution of that issue was one the jury should have determined after having been properly instructed on the law of self-defense. As the State concedes, in the trial court's denial of the request for a jury instruction on the law of self-defense was erroneous. We therefore reverse and remand this case to the trial court for a new trial.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for a new trial.

_____
JERRY L. SMITH, JUDGE