IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2004 Session

## KENNETH ANTHONY v. STATE OF TENNESSEE.

**Direct Appeal from the Criminal Court for Davidson County
No. 98-C-1985     Seth Norman, Judge**

**No. M2003-02272-CCA-R3-PC - Filed August 11, 2004**

The Appellant, Kenneth Anthony, appeals from the Davidson County Criminal Court's dismissal of his petition for post-conviction relief. Anthony was convicted of first degree premeditated murder and attempted second degree murder. On appeal, Anthony argues that he received ineffective assistance of counsel. After review of the record, we reverse the judgment of the post-conviction court and remand for a new trial.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Richard McGee, Nashville, Tennessee, for the Appellant, Kenneth Anthony.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Helena Walton Yarbrough, Assistant Attorney General; Victor S. (Torry) Johnson III; and Dan Hamm, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

    In 1999, the Appellant was convicted by a Davidson County jury of first degree premeditated murder and attempted second degree murder. As a result of these convictions, the Appellant was sentenced to a term of life imprisonment and ten years in the Department of Correction, to be served concurrently. On direct appeal, the Appellant's challenge to the sufficiency of the convicting evidence was found to be without merit, and his convictions were affirmed. *See State v. Kenneth Lamont Anthony*, No. M2000-00839-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 27, 2001), *perm. to appeal denied*, (Tenn. 2001). As summarized on direct appeal, the facts underlying these convictions established that:

At about 1:30 a.m. on May 17, 1998, Tony Moore and Teresa Day were walking together on the sidewalk on South Seventh Street in Nashville, Tennessee. The Defendant was walking on the same sidewalk but in the opposite direction. According to one witness who was sitting on a porch step within a few feet of the shooting, when the Defendant met Moore and Day, he said, "I heard you was looking for me," and began shooting at Moore and Day. At least six shots were fired in rapid succession. Moore was shot once in the chest and died about two days later. He was not physically able to give a statement to the police prior to his death. Day was shot in both knees and feet. She later identified the Defendant as the shooter. The witness who heard the Defendant's statement immediately prior to the shooting was also able to identify the Defendant as the shooter. No weapons were found in the possession of either victim.

*Id.*

In October of 2002, the Appellant filed a *pro se* petition for post-conviction relief, alleging that he was denied the effective assistance of counsel. Following the appointment of counsel, an evidentiary hearing was held on July 1, 2003. The post-conviction court denied relief by written order of August 21, 2003. This timely appeal followed.

**ANALYSIS**

On appeal, the Appellant raises the single issue of whether he received ineffective assistance of counsel at trial. The Post-Conviction Procedure Act, Tennessee Code Annotated sections 40-30-101 to -313 (2003), provides a method by which a defendant may challenge a conviction or sentence for violation of a state or federal constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-110(f) (2003).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must establish, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984): (1) deficient representation and (2) prejudice resulting from the deficiency. Thus, the Appellant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the Appellant must demonstrate that counsel's errors were so serious as to deprive the Appellant of a fair trial, a trial whose result is reliable. *Id.*

With respect to deficient performance, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Appellant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). We should

defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

Relying on *State v. Zimmerman*, 823 S.W.2d 220 (Tenn. Crim. App. 1991), the Appellant specifically argues that trial counsel[1] was ineffective because he informed the jurors during opening statement that the Appellant was acting in self-defense, however no proof of this defense was offered at trial. In his opening statement, trial counsel made the following comments:

> All I'm going to tell you is this: The version you just heard from the State, not only is it incomplete, not only is it inaccurate, it unfairly depicts this person, Mr. Moore, this Tony Moore, as an unwilling victim instead of a stalking predator who got what he deserved.
>
> After listening to all the testimony in this case, we would like for you to remember a couple of facts. One, remember the kind of person Mr. Moore is depicted as. Remember very carefully. And two, please remember that in that narrow passageway, that night, May 17, what you had was two people. One a predator, the other potential prey. And it is our position, and it will be throughout this trial that my client, Kenneth Lamont Anthony was the prey and the predator set out to find him on a night several days before this event. Tony Moore, Mr. Moore, whatever nickname he wants to use, got what was coming to him.

Following the State's proof which established that the Appellant was the person who shot and killed Moore and wounded Day, defense counsel rested without putting on any proof. The proof at trial was void of any evidence or suggestion that Moore was the "predator" and that the Appellant was the "prey." The proof did establish that the victim Moore had been visiting with his son shortly before he was murdered. The trial court denied a jury instruction on self-defense, finding no evidence was introduced to support justification under this theory.

---

[1] Trial counsel has been suspended from the practice of law since July 10, 2000.

## A. Opening Statement

Two reported Tennessee cases address the failure of counsel to fulfill promises made to the jury during voir dire or opening statement. In *State v. Zimmerman*, 823 S.W.2d 220, 221 (Tenn. Crim. App. 1991), the defendant was charged with second degree murder. During opening statement, counsel informed the jury, in accordance with trial strategy, that the defendant and a psychologist would testify regarding the defense of "battered wife syndrome." However, at the conclusion of the State's proof, counsel recommended to the defendant that she not testify. *Id*. at 222. Moreover, although lay and expert witnesses were available to testify that the Appellant "was a physically abused and battered wife under unusual stress[,]" none of the witnesses were called, as the defense offered no proof. *Id*. at 224. This court concluded that counsel was ineffective, stating that "nothing changed during the course of the trial. . . . In other words, there appears to have been no basis for the sudden change in strategy." *Id*. at 226.

In *State v. King*, 989 S.W.2d 319, 330 (Tenn. 1999), the defendant, who was convicted of felony murder, complained that his counsel "abandoned the defense theory of voluntary intoxication after having introduced it to the jury during the opening statement."[2] During King's trial, his ex-girlfriend, Lori Eastman Carter,

> testified for the prosecution, over the objection of defense counsel, that [King] had attempted to kill her on October 13, 1982. According to Ms. Carter, the appellant hit her with a slapstick numerous times while repeatedly asking her "how it felt to be dying, so that the next woman he killed he would know how she felt." Ms. Carter testified that the appellant was sober when he attacked her with the slapstick.

*Id.* at 331.

At the post-conviction hearing, defense counsel asserted that "he decided to abandon the use of voluntary intoxication to defend appellant's actions after the testimony of appellant's ex-girlfriend, Lori Eastman Carter . . . [because] Ms. Carter's testimony was unexpected and devastating to appellant's case." *Id*. Counsel asserted that "the theory of voluntary intoxication was rendered futile after Ms. Carter's testimony." Accordingly, counsel "revised the defense theory solely in response to the surprise testimony of Ms. Carter." *Id*. Our supreme court determined that counsel's change of strategy during trial did not constitute ineffective assistance. *Id*.

---

[2]During opening statement, defense counsel told the jury that:

> We think the proof will show that whatever happened to Mrs. Smith [the victim], Mr. Kings's involvement was the product of an incredible quantity of intoxicants. And we think the proof will show that he cannot be held legally responsible for all of his actions to the degree the State would ask you, simply because of the vast quantities of intoxicants that he consumed.

*King*, 989 S.W.2d at 319.

In the instant case, the post-conviction court observed in its order denying relief that "[i]n closing arguments, it appears as though [trial counsel's] angle of attack changed. He seemed to have transformed his tactic from self-defense to an identity issue." However, from our careful review of the record, we conclude that the instant case is nearly identical to *Zimmerman*. The theory of defense from the inception of the case was that the Appellant acted in self-defense. Acting according to the predetermined strategy, trial counsel informed the jury during opening statement that they would hear evidence that the "predator" was Moore and the Appellant was "potential prey."

We note here, that this defect was underscored during the State's closing argument. During closing argument, the Assistant District Attorney stated that:

> So, ladies and gentlemen, when you get upstairs and you deliberate, one thing the jury must consider is whether or not this was self defense. Because there is no proof on self defense. You are not to consider whether or not Tony Moore may or may not have a nickname of Pretty Tony, because there is no proof of that. [Trial counsel] told you that there would be proof of that, but there was no proof of that. There is also no proof whatsoever that Tony Moore was a stalking predator who got what he deserved. A man, who goes to the home of his children's grandmother to visit his child, that is what you have before you. He visited with his child that night. He step[ped] foot on dangerous territory. He set foot in James Casey Homes, it is a project. You can expect to get killed. That's what he is telling you, that he deserved to be killed because he stepped foot where his kids were staying with their grandmother to visit. That's what you have before you. You have before you proof that the man committed the unholy sin of walking down the sidewalk. Didn't utter a word, but deserved to die.
>
> . . .
>
> . . . In his opening statement what he told you was that Mr. Tony Moore was worthless and deserved to die. That's what he told you in his opening statement.

On appeal, the State contends that trial counsel's strategy was to attack the case through cross-examination. However, in *Zimmerman*, this court cautioned that a "trial attorney should only inform the jury of the evidence that he is sure he can prove. His failure to keep a promise to the jury impairs his personal credibility. The jury may view unsupported claims as an outright attempt at misrepresentation." *Zimmerman*, 823 S.W.2d at 225. In the instant case, trial counsel failed to keep his promise to the jury, without a reasonable basis for such departure. All potential pitfalls were known and considered by counsel prior to trial.

In this case, counsel promised evidence of self-defense to the jury and failed to explain the failure to keep that promise. Therefore, as in *Zimmerman*, "we are . . . constrained to hold that the efforts of trial counsel were deficient, not necessarily with respect to preparation or investigation, but by the peremptory abandonment of the pre-established and reasonably sound defense strategy[.]"

*Id*. at 224. Moreover, we conclude that there existed a reasonable probability of a different result at trial, namely a conviction for a lesser included offense, had the promise to the jury been fulfilled. *Id.* at 228; *see also State v. Harry David Johnson*, No. E2002-01949-CCA-R3-PC (Tenn. Crim. App. at Knoxville, Jan. 15, 2004), *perm. to appeal denied*, (Tenn. 2004).

## B. Evidence in Support of Self-Defense Theory

Secondly, we hold that if trial counsel's failure to follow through with the promise made in the opening statement had been neither deficient nor prejudicial, the failure to call any witnesses and present favorable evidence available would call into question the performance of trial counsel. *See Zimmerman*, 823 S.W.2d at 226. The Appellant submits that trial counsel could have presented the following evidence in support of a self-defense theory: (1) the criminal history of the victim Moore, (2) the testimony of the victim Day, and (3) the testimony of the Appellant.

At the post-conviction hearing, trial counsel was asked, "[W]here was the proof that you were going to advance in support of the theory of the defense, which you told the jury you were going to advance?" Counsel responded that he intended on calling a Mr. Seral Lavene to testify that he was robbed at gunpoint by Moore four days prior to Moore's death. At trial, the Assistant District Attorney informed the court that Lavene could invoke his right against self-incrimination due to the fact that he was a felon in possession of a handgun on this occasion. Moreover, trial counsel was aware of this fact because he had previously advised Lavene that be may be entitled to a lawyer. After this exchange, Lavene did not testify at trial. Accordingly, the effect here was that no evidence at all, favorable or otherwise, was presented by the defense.

The test for establishing self-defense is three-fold: the defendant must reasonably believe he is threatened with imminent loss of life or serious bodily injury; the danger creating the belief must be real or honestly believed to be real at the time of the action; and the belief must be founded on reasonable grounds. Sentencing Commission Comments, Tenn. Code Ann. § 39-11-611 (2003). In support of his ineffective claim, the Appellant has submitted copies of arrest warrants and affidavits of complaints, concerning five crimes committed by Moore. He also has provided discovery materials which were given to trial counsel, wherein it was stated that:

> Ms. Teresa Day told police that Mr. Moore has robbed several persons in the past including her cousin [the Appellant], known to her as Kenny Holt. She said that on this night her cousin approached Mr. Moore, said something to him, and began shooting at him. Ms. Day says that Mr. Moore returned fire and grabbed her using her as a shield.

Moreover, the Appellant stated at the post-conviction hearing, "I told [trial counsel] that I wanted to [testify] because I wanted to tell my side of the story. . . [, but] he did not call me to testify at the trial."[3]

First, the Appellant argues that trial counsel failed to investigate the criminal history of the victim Moore and, therefore, there was no proof presented that Moore had a reputation as a robber and that the Appellant "was in fear" of Moore. At the post-conviction hearing, the Appellant testified that other individuals had told him that Moore "had been threatening my life over an incident[.]" Trial counsel admitted that he was aware of Moore's criminal history but made no attempts to place such information before the jury. Evidence of the reputation of the victim for peace or violence in the community is "generally admissible as is proof of specific acts of violence directed toward the defendant by the person he is accused of killing if the defendant claims to have been motivated to self-defense, by fears engendered by such knowledge." *State v. Stanley Warren Mills*, No. 03C01-9810-CR-00368 (Tenn. Crim. App. at Knoxville, July 13, 1999), *perm. to appeal denied*, (Tenn. 2000) (quoting *Broz v. State*, 472 S.W.2d 907, 910 (Tenn. Crim. App. 1971)). Moreover, the character of the deceased for violence, as well as his animosity toward the Appellant, as indicated by words and actions at the time of the killing and before, are matters for consideration of the jury upon the question of self-defense. *State v. Butler*, 626 S.W.2d 6, 11 (Tenn. 1981).

Second, trial counsel did not interview the Appellant's cousin, the victim Teresa Day, and she was not called as a witness by either the State or the defense at trial. The Appellant contends that, as a result of this failure, "no evidence was presented at trial that the victim was carrying a gun when he was shot." In Day's statements to police, she indicated that the victim Moore "has robbed everyone in East Nashville and had probably robbed her cousin Kenny." Moreover, in discovery materials provided to trial counsel, Day stated that Moore returned fire, indicating that Moore was armed on the evening in question. In closing statements, the State implied that Day was not called as a witness because she would not testify against the Appellant.[4] According to Ollie Anthony, the Appellant's father, trial counsel stated that he could not locate Day. Anthony informed trial counsel, "about a month or so" before trial, that Day was incarcerated in Nashville.

---

[3] The procedure adopted by the Tennessee Supreme Court in *Momon v. State*, 18 S.W.3d 152, 157 (Tenn. 1999), to ensure that a defendant has personally waived his right to testify does not apply to the Appellant. The Appellant's trial was held prior to our supreme court's holding in *Momon*, and the court in *Momon* expressly held that the procedures set forth "do not establish a new constitutional rule which must be retroactively applied," specifying that the procedure should be applied "in all cases tried or retried after the date of this decision." *Momon*, 18 S.W.3d at 162-63.

[4] The Assistant District Attorney provided the following explanation for Day's absence at trial:

> Ms. Day, I'm sorry, I have limited powers. I have limited powers. Ms. Thomas and Ms. Beard came up here under subpoena and they testified as good citizens before you here today. No, I couldn't put Ms. Day on that stand. She's his cousin. She's his cousin. She's been [sic] four times by him. You don't have her testimony and I apologize for that and I wish I could give it to you, but I can't. I have no more power than Mr. Roberts [trial counsel] does. Mr. Roberts and I are limited by the power of the subpoena. We are limited by the power of subpoena.

Presenting Day[5] as a witness and providing the jury with evidence of Moore's criminal reputation was material to establishing a theory of self-defense; *i.e.*, that the Appellant reasonably believed he was threatened with imminent loss of life or serious bodily injury. Trial counsel has a duty to use evidence which may be of assistance to the defense. *Zimmerman*, 823 S.W.2d at 227. In this instance, the evidence which could have been produced by the Appellant might not have persuaded the jury to acquit on all charges. There is a reasonable probability, however, that if the evidence had been presented, the Appellant might have been convicted of a lesser included offense.

Third, the cumulative effect of the misleading opening statement and the failure to present favorable witnesses and other evidence was exacerbated by trial counsel's recommendation to the Appellant not to testify. *Id*. The Appellant's testimony would have allowed favorable evidence into the record, including that Moore had threatened the Appellant's life and that Moore pulled a gun first, but this evidence was not admitted based upon trial counsel's decision to forego any defense proof. Any disadvantage by calling the Appellant to testify was well known to counsel prior to the trial. It would appear that little was to be lost in not permitting the Appellant to testify since trial counsel's opening statement was a tacit admission of the Appellant's intent to kill Moore. The State's proof simply corroborated this intent. If it was appropriate for the Appellant not to testify, then trial counsel should have proceeded with other available evidence.

It may be that none of these areas of deficient performance, standing alone, would have justified the grant of a new trial. *Id.* Yet, we think that the cumulative effect of these errors deprived the Appellant of a meaningful defense. The reliability of the verdict is in question. *Id.* We reiterate that these circumstances may not have justified an acquittal. *Id*. There is, however, a thin line between first degree premeditated murder and second degree murder. Indeed, at the motion for judgment of acquittal, the trial court characterized the State's proof of premeditation as "extremely thin" and "sketchy." Had the Appellant's proof been presented to the jury there is a reasonable probability that the results would have been more favorable. *Id.*

## CONCLUSION

Based upon the foregoing, we conclude that the Appellant was denied the effective assistance of counsel. Accordingly, the judgment of the post-conviction court dismissing the Appellant's petition is reversed, and the case is remanded for a new trial.

_____
DAVID G. HAYES, JUDGE

---

[5]Although it is unclear what Day would have testified to had she been called as a witness, nonetheless, trial counsel was in possession of Day's statements to police which could have been used for impeachment purposes. *See* Tenn. R. Evid. 607, 613.