IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 3, 2004 Session

**STATE OF TENNESSEE v. MORGAN JOHNSON**

**Appeal from the Criminal Court for Shelby County**
**No. 02-07451    Joseph B. Dailey, Judge**

---

**No. W2003-02349-CCA-R3-CD  - Filed October 1, 2004**

---

The defendant, Morgan Johnson, was convicted of resisting arrest.  He was acquitted of two counts of assault.  The trial court imposed a sentence of two days, to be served as one day of incarceration and ninety days' probation.  In this appeal, the defendant asserts (1) that his conviction should be dismissed because his arrest was unlawful; (2) that the evidence was insufficient to support his conviction; (3) that the trial court erred by refusing to instruct the jury on self-defense; and (4) that the trial court erred by denying his request for judicial diversion.  Because the evidence adduced at trial fairly raised the issue of self-defense, the trial court erred by refusing to provide a corresponding instruction to the jury.  The error cannot be classified as harmless beyond a reasonable doubt.  The judgment of the trial court is, therefore, reversed and the cause is remanded for a new trial.

**Tenn. R. App. P. 3; Judgment of the Trial Court Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Randall B. Tolley, Memphis, Tennessee, for the appellant, Morgan Johnson.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; and Steven Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 5, 2002, Memphis Police Department Patrol Officer Francis Cherry was working special detail at the Memphis in May music festival.  Officer Cherry and other plain-clothes officers, Mike England and Adam Pickering, were patrolling the crowd for "major crimes" when Officer Cherry, who was wearing blue casual pants and a white shirt with a dragon design, observed six men urinating in an alley.  Officer Cherry identified himself as a Memphis Police Officer and ordered the men to leave.  Five of the men left immediately but the defendant, who was standing with his back to Officer Cherry, looked briefly at the officer and continued to urinate.  When the officer

approached the defendant, tapped him on the shoulder, and said, "Hey, fellow," the defendant turned quickly and threw a drink in the officer's face, hitting him in the ear.

At trial, Officer Cherry testified that he was initially stunned by the contact but after Officer England "engag[ed] the defendant up against the chainlink fence," was able to assist. According to Officer Cherry, the defendant resisted their efforts, creating a "push and pull into the fence." He insisted that he and Officer England repeatedly informed the defendant that he was under arrest but the defendant continued to resist.

Officer Cherry testified that during the struggle, the three men lost their balance and "crashed onto a car." As the defendant continued to resist, Officer Pickering arrived and sprayed the defendant with pepper foam. Officer Cherry, who was sprayed inadvertently, could not see and was forced to step back from the fray. According to Officer Cherry, the defendant was unaffected by the pepper spray and continued to struggle. He denied either punching or kicking the defendant and claimed that his "vision was on one arm, one hand, one wrist, and trying to get it behind his back and keep enough pressure on [the defendant] that he wouldn't hurt me or anyone else." Officer Cherry insisted that the defendant "just would not stop fighting." Eventually, he and the other officers were able to place handcuffs on the defendant. According to Officer Cherry, he left the alley quickly because he "saw a crowd of people. I had just finished a fight. I didn't need another one . . . ."

During cross-examination, Officer Cherry acknowledged that he did not specifically instruct the defendant to leave the alley, explaining that he had addressed all of the men collectively. When asked how the defendant could see his badge when there were five people between them, Officer Cherry responded, "That's why I walked up behind him." He testified that his badge was hanging from his neck as he approached the defendant.

Officer England, who was wearing a long-sleeved green shirt and blue jeans at the time of the offense, testified that his gun and badge were attached to his belt and concealed under his shirt. According to Officer England, he saw several men urinating in an alley and heard Officer Cherry direct them to leave. Officer England testified that each of the men "except one . . . quickly finished up business and headed down the alley." He claimed that when Officer Cherry walked up behind the defendant, the defendant threw a drink at the officer and punched him in the head. He stated that he identified himself as a police officer and pushed the defendant into a chain link fence, intending to arrest him for assaulting Officer Cherry, but the defendant "immediately started punching and kicking." When Officer England, assisted by Officer Cherry, struggled to subdue the defendant, all three men fell onto the hood of a car. He testified that the defendant continued to resist the officer's efforts to place handcuffs on him. Officer England recalled that at one point, the defendant said, "I give up," and the officers responded by backing away. Officer England testified that when he reached for his handcuffs, however, the defendant "reached up, grabbed me by the front of my shirt, yanked me forward, and tried to hit me in the face, which I was able to duck . . . , and I ended up getting hit on the top of the head." The officer conceded that he struck the defendant in the face twice, explaining that he was "trying to get back away from him and disengage as much as I could

so that I couldn't be hit anymore." Officer England also admitted kicking the defendant three times as he lay on the ground.

During cross-examination, Officer England, who weighed 240 pounds, acknowledged that he also punched the defendant's arm "several" times. When asked about an injury to his hand, Officer England responded, "[The defendant] could have bit me, or I could have hit him." The officer also admitted that Officer Pickering was lying on top of the defendant when he kicked him.

Officer Adam Pickering, who, at the time of the incident, was wearing blue jeans, tennis shoes, a t-shirt, and a camouflage jacket as he worked plain-clothes detail with officers Cherry and England, testified that he had a weapon, handcuffs, a can of pepper foam, and a police radio attached to his belt and concealed under his untucked shirt. According to Officer Pickering, when the officers entered the alley they saw five or six men urinating and Officer Cherry told them to move along. Officer Pickering testified that all but the defendant, who was "carrying on his business," left the alley. He recalled that when Officer Cherry said to the defendant, "Maybe you didn't hear me. Memphis Police. You need to head on," the defendant threw his drink and struck Officer Cherry in the head. According to Officer Pickering, when Officer England tried to pin the defendant against a chain link fence, the defendant kicked and punched him. He insisted that he identified himself as a police officer and warned the defendant to "[s]top resisting or I'm going to spray you." The officer acknowledged spraying the defendant with pepper foam when he continued to struggle. Officer Pickering, who denied kicking or punching the defendant, explained, "I tried to pin him with an arm bar; was unsuccessful . . . . I tried for a wrist lock; was unsuccessful . . . . I tried to pin him to the ground by using my body weight, my knees across his shoulders." He confirmed that the defendant at one point said, "I give up," and yet continued to struggle.

Brenda Kerr Johnson, the defendant's mother and a witness for the defense, testified that the defendant's brother, Marcus Johnson, telephoned her and told her that some men had beaten the defendant and that he had been arrested. She described the defendant's injuries as "an unbelievable sight," explaining that his face was "distorted." She recalled that the defendant had bruises on his neck, shoulders, face, and back and that his face was swollen, particularly his right eye, the white of which was red. Maurice Johnson, the defendant's father, took photographs of the defendant after his release from jail.

Sylvester Sartor, an Assistant Public Defender and friend of the defendant's family, testified that he saw the defendant when he was released from jail on the day after the arrest. Sartor described the defendant as having "multiple facial injuries."

Chad Michael Roaf, who attended the Memphis in May music festival with the defendant and the defendant's brother, Marcus, testified that they arrived at approximately 9:30 p.m. and went to Pat O'Brien's restaurant, where they each ordered a "Hurricane." Roaf recalled that as they walked down Beale Street, the defendant stated that he needed to relieve himself and went into an alley to do so. According to Roaf, he was urinating in the alley when he saw someone shove the defendant into the chain link fence. Roaf claimed that "three huge Caucasian males basically jump[ed] [the

-3-

defendant]," "slamm[ing]" him onto the hood of a car and striking him in the face." Roaf testified that one officer grabbed the defendant by the neck and sprayed him with pepper spray. He contended that the men never identified themselves as police officers. According to Roaf, the defendant asked for help after the officers "manhandled" him to the ground. He recalled that he then sought help from defendant's brother and that when the two of them returned to the alley, a uniformed officer shouted, "Where are you going boy?" Roaf insisted that the defendant never attempted to strike any of the officers but, during cross-examination, admitted that he had previously informed investigators with Internal Affairs that the officers never struck the defendant.

The defendant's brother, Marcus Johnson, testified that he was alerted to the altercation when Roaf grabbed his shirt and said, "Your brother's getting jumped." Johnson stated that as he entered the nearby alley, he saw several men kicking the defendant as he lay on the ground. He testified that the defendant was placed in handcuffs and led down the alley. According to Johnson, the defendant's nose was swollen and his eyes were closed after the altercation. Johnson stated that the officers threatened to place him under arrest if he "[didn't] go on about [his] business."

The defendant,[1] a daycare director at Memphis Christian Academy, testified that after getting drinks at Pat O'Brien's, he walked into an alley, where several other men were urinating, to do the same. The defendant claimed that he then heard someone say, "You all need to go piss somewhere else," and saw three white men walking down the alley. According to the defendant, none of the three men ever identified themselves as police. He explained that he continued to urinate because he thought the men were "drunk people." The defendant claimed that when one of the men shoved him into the fence, he threw his drink, contending that he did so only to create a diversion so he could run away. According to the defendant, he was struck in the head immediately after throwing the drink and then covered his face out of instinct. He remembered being punched, kicked, and sprayed with pepper spray, which prevented him from opening his eyes. He stated that the men identified themselves as police officers only after he was subdued. According to the defendant, he was kicked so hard in the abdomen that he defecated. He claimed that he never kicked or punched any of the officers and instead rolled into a ball to resist the attack. He testified that he suffered a broken blood vessel in his eye and thirty-seven bruises on his upper body.

I

The defendant asserts that his conviction is illegal because the officers were not acting lawfully when they tried to arrest him. The state argues that the language of Tennessee Code Annotated section 39-16-602 specifically states that an unlawful arrest does not prohibit a conviction for resisting arrest.

Initially, as the state correctly observes, while the defendant raised this issue in his motion for a new trial, he did not contend during the trial that his arrest was unlawful. Generally, one may not assert one ground for relief at trial and then pursue a new or different theory on appeal. See State

---

[1]Although the defendant was seen by the jury at trial, it was not established until the sentencing hearing that he was 5'10" tall and weighed approximately 155 lbs.

v. Adkisson, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). In consequence, the petitioner has waived our consideration of this issue. Moreover, the evidence adduced at trial establishes that Officer England sought to arrest the defendant for committing a misdemeanor in his presence, the assault of Officer Cherry, which was authorized by law. See Tenn. Code Ann. § 40-7-103(a)(1). Thus, the defendant is not entitled to relief on the merits of the issue. In addition, the defendant would not be entitled to relief even if the arrest had been unlawful.

Historically, an unlawful arrest was a defense not only to resisting arrest but also to a homicide committed during the resistance. See Poteete v. State, 68 Tenn. 261 (1878). In Poteete, the victim, a deputy sheriff, was shot and killed during an attempt to arrest the brothers Poteete on the basis of mitimuses issued by the clerk of the court. Our supreme court determined that the faulty mitimuses conferred no authority on the victim to arrest the defendant and, as a result, the victim's attempt to make the arrest "would be a trespass." Id. at 265. Our high court held that "if the precept in the hands of the officer be unauthorized by law, not issued by authority of an officer authorized to issue it, he attempts to execute it at his peril." Id. In Shelton v. State, 460 S.W.2d 869, 874 (Tenn. Crim. App. 1970), this court restated the rule as follows, emphasizing that the subject of an unlawful arrest was not entitled to resort to unnecessary or disproportionate force:

> We recognize and approve the general rule that every person has a right to resist an unlawful arrest, and that in preventing such illegal restraint of his liberty he may use such force as may be necessary. But that is not an unlimited right. "Necessary" is a relative term, depending on the circumstances of each case. Force may not be resorted to or means of resistance adopted which are disproportionate to the effort made to take him into custody.

Under current statutory law, however, a defendant charged with resisting arrest may not claim as a defense that the arrest was unauthorized by law. Tennessee Code Annotated section 39-16-602, adopted in 1989, provides, in pertinent part, as follows:

> (a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

> (b) Except as provided in § 39-11-611, it is no defense to prosecution under this section that the stop, frisk, halt, arrest or search was unlawful.

Tenn. Code Ann. § 39-16-602(a), (b) (emphasis added). The Sentencing Commission Comments to this section note that the statute "makes it clear that the offender cannot defend by proving that the law enforcement activity was unlawful," and that "[t]his rejects traditional authority, but is consistent with the modern trend." Tenn. Code Ann. § 39-16-602, Sentencing Commission Comments (citations omitted).

Under certain circumstances, however, self-defense may be a justification for resisting arrest. This rule is contained in Tennessee Code Annotated section 39-11-611, the relevant portion of which provides as follows:

> (e)  The threat or use of force against another is not justified to resist a halt at a roadblock, arrest, search, or stop and frisk that the person knows is being made by a law enforcement officer, unless:
>
> (1)  The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and
>
> (2)  The person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

Tenn. Code Ann. § 39-11-611(e).  This court has held that subsection (e) is a restriction on the use of self-defense as justification for the use of force and emphasized that the statute should be read as a whole to determine whether the defense is applicable.  State v. Burnette Mize, No. 03C01-9405-CR-00163 (Tenn. Crim. App., at Knoxville, Sept. 22, 1995); see also State v. Richard C. Silk, No. M1999-02526-CCA-R3-CD (Tenn. Crim. App., at Nashville, Mar. 2, 2001).  As observed in the Sentencing Commission Comments:

> Subsection (e) represents a policy decision by the commission that the street is not the proper forum for determining the legality of an arrest. To a large extent, the rule is designed to protect citizens from being harmed by law enforcement officers. Research has shown that citizens who resist arrest frequently are injured by trained officers who use their skills and weapons to protect themselves and effectuate the arrest. If the defendant knows it is a law enforcement officer who has stopped or arrested him or her, respect for the rule of law requires the defendant to submit to apparent authority. . . .

Tenn. Code Ann. § 39-11-611, Sentencing Commission Comments.  In any event, these statutes clearly establish that the legality of the arrest is irrelevant in determining whether a conviction for resisting arrest is proper.  Under these circumstances, it is our view that the defendant is not entitled to relief on this ground.

II

The defendant also asserts that the evidence is insufficient to support his conviction.  On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.  Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978).  When the sufficiency of the evidence is

challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Resisting arrest is defined as follows:

It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at such officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Tenn. Code Ann. § 39-16-602(a). "'Force' means compulsion by the use of physical power or violence . . . ." Tenn. Code Ann. § 39-11-106(12). As indicated, self-defense can, in certain instances, operate as a justification for resisting arrest. Here, however, the trial court did not instruct the jury on the issue of self-defense.

In this case, each of the three police officers testified that they identified themselves as law enforcement officers and repeatedly informed the defendant that he was under arrest. According to the officers, the defendant resisted all efforts to place him under arrest by kicking and punching at them, even after he had been sprayed by pepper spray. The jury was free to reject the defendant's claim that he was unaware of the officers' identity and that he did not fight back, even as he was beaten. In our view, the evidence is sufficient to support the conviction.

III

In a related issue, the defendant asserts that the trial court erred by refusing to instruct the jury on the issue of self-defense. While recognizing the viability of such a defense, the state asserts that self-defense was not fairly raised by the proof at trial.

Under the United States and Tennessee Constitutions, a defendant has a constitutional right to trial by jury, which dictates that all issues of fact be tried and determined by twelve jurors. U.S. Const. amend VI; Tenn. Const. art. 1, § 6; see State v. Bobo, 814 S.W.2d 353, 356 (Tenn. 1991); Willard v. State, 174 Tenn. 642, 130 S.W.2d 99 (1939). This right encompasses the defendant's right to a correct and complete charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). In consequence, the trial court has a duty "to give a complete charge of the law applicable to the facts of a case." State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986); see State v. Forbes, 793 S.W.2d 236, 249 (Tenn. 1990); see also Tenn. R. Crim. P. 30.

Our law requires that all of the elements of each offense be described and defined in connection with that offense. See State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). When the evidence in the record fairly raises or supports the existence of a defense, the trial court is compelled to instruct the jury on the issue. Manning v. State, 500 S.W.2d 913, 915-16 (Tenn. 1973); see also Almonrode v. State, 567 S.W.2d 184, 187 (Tenn. 1978). As part of its instruction, the trial court must inform the jury that any reasonable doubt on the existence of the defense requires acquittal. Tenn. Code Ann. § 39-11-203(c); State v. Bult, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998); State v. Shropshire, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). This court has added that "due process requires that a criminal defendant be afforded a meaningful opportunity to present a complete defense, which includes the right to have the jury instructed regarding fundamental defenses raised by the evidence." State v. Nevens, No. M2000-00815-CCA-R3-CD (Tenn. Crim. App. at Nashville, Apr. 27, 2001); see also Tenn. Code Ann. § 39-11-203(c),(d).

A defendant is not required to enter a plea of self-defense. See Myers v. State, 185 Tenn. 264, 206 S.W.2d 30 (1947). In Myers, our supreme court stated that

> "It is not true, as an abstract principle of law, that a plea of self-defense, in a prosecution for murder or manslaughter, is an admission that the defendant did the killing. Self-defense is not a special plea. It comes under the general issue tendered by the plea of not guilty. The defendant does not bear the burden of proof that he or she acted in self-defense. The state has to prove beyond a reasonable doubt that the homicide was committed feloniously and therefore not in self-defense."

206 S.W.2d at 32 (quoting State v. Linden, 154 La. 65, 97 So. 299, 300 (1923)). Our high court ruled that although Myers claimed that his shooting of the victim was an accident, there was evidence from which the jury could infer that he was acting in self-defense and thus an instruction on the issue was warranted.

Whether the evidence has raised a defense and, therefore, requires a jury instruction depends upon an examination of the evidence in a light most favorable to the defendant. Bult, 989 S.W.2d at 733. Tennessee Code Annotated section 39-11-611 provides, in pertinent part, as follows:

> (a) A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. The person must have a reasonable belief that there is an imminent danger of death or serious bodily injury. The danger creating the belief of imminent death or serious bodily injury must be real, or honestly believed to be real at the time, and must be founded upon reasonable grounds. There is no duty to retreat before a person threatens or uses force.
> *          *          *

(e) The threat or use of force against another is not justified to resist a halt at a roadblock, arrest, search, or stop and frisk that the person knows is being made by a law enforcement officer, unless:

(1) The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and

(2) The person reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

Tenn. Code Ann. § 39-11-611(a), (e).

Here, defense counsel requested that the trial court instruct the jury on the issue of self-defense, contending that if the jury chose to accredit a portion of the state's proof and a portion of the defendant's proof, then the issue had been fairly raised. The state initially argued that self-defense was not a defense to resisting arrest but later asserted that self-defense was inconsistent with the defendant's theory of the case. The trial court refused the defendant's request for an instruction, observing that it was the defendant's theory that he did not strike any of the officers and had done nothing to provoke the beating that he received.

The burden of proof is on the state to negate the existence of self-defense if it is raised by the proof. See Tenn. Code Ann. § 39-11-201(a)(3). Further, the defendant is not required to rely solely on proof provided by his own witnesses to support a defense of self-defense and may rely on proof submitted by the state. See Tenn. Code Ann. § 39-11-201(d). Our supreme court has observed that "[t]he evidence, not the parties, controls whether an instruction is required." State v. Allen, 69 S.W.3d 181, 188 (Tenn. 2002) (discussing when an instruction on a lesser included offense is required).

In this case, each of the officers testified that the defendant fought hard, kicking, punching, and otherwise resisting their efforts to arrest him. The defendant and his witnesses testified that the attack was unprovoked and that the conduct of the officers was excessive. The defendant claimed he was initially unaware that his assailants were police officers and, "shocked" by their conduct, tried to distract them so he could escape. He stated that he was kicked, punched, and sprayed with pepper spray during the encounter. While he denied striking any of the officers, the defendant admitted that he used his hands to cover his face, "block[ed]" with his hands, and "curl[ed] up" to avoid the officers' putting his arms behind his back. Certainly there was some evidence from which the jury could have determined that the officers utilized greater force than was necessary to place the defendant under arrest. For example, Officer England admitted kicking the defendant after he was pinned to the ground. The jury, as fact-finder, was free to accredit any portion of each witness' testimony in reaching its conclusion. In consequence, it was their prerogative to conclude that the defendant fought back only to protect himself against police officers who had used more force than

was necessary to effectuate the arrest. Under these circumstances, an instruction on self-defense was warranted and the trial court erred by refusing to charge the jury on the issue.

When the error is of constitutional dimensions, as in this instance, reversal is required unless the error is harmless beyond a reasonable doubt. See State v. Harris, 989 S.W.2d 307, 314-15 (Tenn. 1999). Jury instructions must be reviewed in the context of the overall charge rather than in isolation. See Sandstrom v. Montana, 442 U.S. 510 (1979); see also State v. Phipps, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). A charge is prejudicial error "if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." Phipps, 883 S.W.2d 142 (citing In re Estate of Elam, 738 S.W.2d 169, 174 (Tenn. 1987)).

In State v. John D. Joslin, No. 03C01-9510-CR-00299 (Tenn. Crim. App., at Knoxville, Sept. 22, 1997), the defendant was charged with first degree murder in the shooting death of his former employee. There was proof that the victim had threatened the defendant on several occasions prior to the shooting and, according to the defendant, had suddenly stopped his vehicle in front of the defendant, stepped out of the vehicle, and placed his hand in his pocket as he walked toward the defendant. The defendant pointed a gun out his car window, warned the victim to stop, and, when the victim did not respond, fired a warning shot over the victim's head. When the victim lunged, the defendant fired a fatal shot. The trial court omitted the phrase "attempted use of force" from the first paragraph of its instruction on self-defense but used the phrase later in the instructions. This court held that "the trial court's failure to include the 'attempted use of force' language at the beginning of the instruction was error" but ruled that the error was harmless because the language was included in another portion of the charge.

In a similar case, this court determined that the trial court's failure to instruct the jury on the "attempted use of force" was not harmless beyond a reasonable doubt because the omission "essentially deprived the defendant of right to present a defense." In State v. Dennis V. Morgan, No. W2001-00125-CCA-R3-CD (Tenn. Crim. App., at Jackson, Mar. 27, 2002), the defendant was convicted of second degree murder for shooting an acquaintance in a parking lot. At trial, the defendant claimed that the victim threatened to kill him and moved to get a weapon from his vehicle. The trial court completely omitted the "attempted use of force" language from the jury instruction on self-defense.

In this case, the trial court refused to include an instruction on self-defense, not only as to the charge of resisting arrest but also as to the two counts of assault. The omission of an instruction on self-defense on each of the three counts deprived the defendant of the right to have the jury determine a defense that was fairly raised by the proof. Moreover, the failure to instruct on the issue of self-defense lessened the state's burden of proof as it removed the requirement that the state prove beyond a reasonable doubt that the defendant did not act in self-defense. The jury's verdict of acquittal on the assault counts indicates that it did not wholly accredit the testimony of the witnesses for the state. It is our view, therefore, that the error was not harmless beyond a reasonable doubt. In consequence, the judgment of the trial court must be reversed and the cause remanded for a new trial.

-10-

IV

As his final issue, the defendant asserts that the trial court erred by denying his request for judicial diversion. The state submits that the denial was proper. Although the conviction for resisting arrest has been reversed and remanded for a new trial, this court will address the issue in part to facilitate any further appellate review.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The judicial diversion statute provides that after an adjudication of guilt, a trial court may defer entry of judgment until a defendant successfully completes a diversion program or violates a condition of his release. See Tenn. Code Ann. § 40-35-313. If a defendant is successful, the statute provides for expungement from "all official records . . . all recordation relating to the person's arrest, indictment or information, trial, finding of guilty, and dismissal and discharge pursuant to this section." Tenn. Code Ann. § 40-35-313(b). The effect of dismissal under the diversion statute "is to restore the person, in the contemplation of the law, to the status the person occupied before such arrest or indictment or information." Id.

A defendant who meets the prerequisites of section 40-35-313(a)(1) is not entitled to judicial diversion as a matter of right. State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). The decision to grant or deny judicial diversion rests within the sound discretion of the trial court and will be overturned only after a finding of an abuse of that discretion. Id. "This Court, . . . will not interfere with the refusal of the trial court to grant judicial diversion if there is 'any substantial evidence to support the refusal' contained in the record." Id. (quoting State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992)).

The criteria that the trial court must consider in deciding whether to grant or deny judicial diversion include: (a) the accused's amenability to correction, (b) the circumstances of the offense,

(c) the accused's criminal record, (d) the accused's social history, (e) the status of the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. See State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). In addition, the trial court should determine whether judicial diversion will serve the ends of justice. Id. The trial court must consider all of the enumerated criteria and must clearly articulate on the record the specific reasons for its determination. See State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989); State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988). If the trial court fails to place the reason for the denial of diversion on the record, this court must review the evidence to "'determine whether the trial court reached the correct result notwithstanding its failure to explain its reasoning.'" See State v. Larry Eldon Shannon, No. M2000-00985-CCA-R3-CD (Tenn. Crim. App., at Nashville, July 27, 2001) (quoting State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

In this case, the trial court determined that most of the factors weighed in the defendant's favor. Specifically, the trial court noted that the defendant's family was "extremely supportive," that he had a "positive" educational and employment background, and that he "does things that good citizens are expected to do." Nevertheless, the trial court denied judicial diversion, observing that the "biggest concern" was the defendant's "refusal to acknowledge or his inability to acknowledge any culpability." That finding was based upon the pre-sentence report wherein the defendant denied having resisted the arrest.

This court has held that an admission of guilt is not a prerequisite to the grant of judicial diversion. State v. Lewis, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997). In Lewis, this court ruled that the defendant's "continued denial of guilt should not, in and of itself, preclude judicial diversion." Id. In consequence, the trial court here should not have based the denial of diversion on the defendant's failure to admit guilt.

The record otherwise suggests that the pertinent factors tend to favor a grant of judicial diversion. The twenty-five-year-old defendant is married and supports his child from a previous marriage. He has no prior criminal history and has an excellent employment history. At the time of the trial, the defendant was completing his college education and had been named to the Dean's List. Because, the defendant is entitled to a new trial, any adjudication on this issue by this court would be premature and, perhaps, advisory. See Dotson v. Blake, 29 S.W.3d 26 (Tenn. 2000) (issuance of advisory opinions improper). Nevertheless, had the defendant been properly convicted, the record, as it now appears, does not indicate any basis for the denial of judicial diversion.

Because the trial court erred by refusing to provide an instruction on self-defense and because the error cannot be classified as harmless beyond a reasonable doubt, the defendant's conviction for resisting arrest is reversed and the cause is remanded for a new trial. While the trial court erred by denying judicial diversion solely on the basis of the defendant's continuing denial of guilt, an adjudication ordering the imposition of judicial diversion at this time, absent any conviction, would be premature.

_____
GARY R. WADE, PRESIDING JUDGE